## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Peter and Jane Hansen,

                        Plaintiffs,

                                       Civ. No. 15-2833 (RHK/JSM)

v.                                     **MEMORANDUM OPINION**
                                       **AND ORDER**

Markel American Insurance Company,

                        Defendant.

_____

Stephen P. Watters, Watters Law Office, Minnetonka, Minnesota, for Plaintiffs.

Stephen M. Warner, Arthur, Chapman, Kettering, Smetak & Pikala P.A., Minneapolis, Minnesota, for Defendant.

_____

### INTRODUCTION

      This insurance dispute arises out of damage sustained when a yacht ran aground in the Mississippi River in May 2012. The yacht is owned by Plaintiffs Peter and Jane Hansen (the "Hansens") and insured by Defendant Markel American Insurance Company ("MAIC"). MAIC twice inspected and appraised the yacht's damage and found all, *except* that to the engines, was caused by the May 2012 grounding and covered under the policy; it subsequently issued payment for that damage. After contesting the denial of payment for the damage to the engines for many months, the Hansens commenced the present action, alleging MAIC breached their insurance policy by failing to pay for the damaged engines. Presently before the court is MAIC's Motion for Summary Judgment. For the reasons that follow, the Motion will be granted.

## BACKGROUND

The following facts are undisputed.  "Morning Light" is a 44-foot inland sea boat owned by the Hansens.  On May 15, 2012, the Hansens were on the Mississippi River near Cape Girardeau, Missouri, when the yacht hit a shallow dam and sustained damage to its hull and propellers, mostly on the starboard side.  (Warner Aff. Ex. 5 at 2.)  The yacht was motored to nearby Polestar Marina and underwent repairs to its struts, shaft, and propellers at Bloch Marine.  (Id.)  The cost of these repairs was $1,199.17.  (Id. at 5.)  Later that same day, the Hansens launched the yacht and began the trip home to Lake City, Minnesota.  (Id.)  Four hours into the trip, the starboard engine started experiencing problems with its oil pressure.  (Id.)  The Hansens shut down that engine and used only the port engine.  (Id.)  After two hours of using only one engine, the port engine also started experiencing the same problems.  (Id.)  However, they continued using the port engine to complete their trip home.  (Id.)  In Lake City, Peter Hansen and his son operate Hansen's Harbor Marina, where they provide maintenance to boats and boat engines. (P. Hansen Decl. ¶ 1.)  When "Morning Light" arrived home, they docked the yacht near their shop, and removed and stored the damaged components inside.

**The Policy**

At the time of the grounding, MAIC insured the yacht under Helmsman Yacht Policy number MHY00000014474, issued by the LBS Insurance Group – Larson Agency (the "Policy").  (Warner Aff. Ex. 1.)  It was issued to the Hansens and effective from October 24, 2011 to October 24, 2012.  (Id.)  The Policy provides in relevant part:

## MINNESOTA AMENDATORY ENDORSEMENT

**GENERAL CONDITIONS** . . . Legal Action Against Us . . .

With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 2 years after the date you first have knowledge of the loss.

\*\*\*

## THE MARKEL HELMSMAN YACHT POLICY

## PHYSICAL DAMAGE

1. Coverage
    a. Hull Coverage . . .
        iii. What We Pay
           . . .
           If the insured yacht was damaged before the loss, we will not pay to repair the prior damage. . . .
        iv. Exclusions
           We will not pay for loss, damage or expense caused by . . .
           1) wear and tear, gradual deterioration . . .
           2) failure to maintain the insured yacht (including its machinery and equipment) in good condition so that the insured yacht cannot be damaged by . . . the rigors of normal use.

(Id. at 2, 10–11.)

**The Hansens Submit a Claim**

The Hansens, through their agent Mike Berke, filed an insurance claim with MAIC on July 25, 2012, for damage to the yacht's "propeller, struts, shaft, diesel engine and oil pump."[1]  (Warner Aff. Ex. 2.)  On July 27, 2012, MAIC representative Casey

---

[1] While the parties make it clear that both engines were damaged and inspected, the memoranda and exhibits submitted by both parties are unclear as to whether the Hansens dispute the coverage determination as to both damaged engines or just as to the port engine (see Watters Aff.

Matthews acknowledged the Hansens claim and instructed them on general claim procedures, which included submitting paperwork, repair estimates, and photos.  (Warner Aff. Ex. 3.)  Matthews also told the Hansens to "familiarize yourself with your Policy." (Id.)

To investigate the claim, an inspection of the yacht was required; the first inspection was conducted on November 2, 2012.  (See Warner Aff. Ex. 4.)  However, the yacht was still in the water at that time and the third-party surveyor, Tuck Phillips, determined that certain components needed to be removed or disassembled to gain access to the engines to assess the cause of their damage.[2]  (Id. at 5.)  The Hansens advised that they would not be able to have the engines removed and disassembled for inspection until January.  This eventually occurred on February 7, 2013.  (Warner Aff. Ex. 7 at 4.)  This time, the yacht had been hauled out of the water, loaded onto a trailer, and had both engines removed.  (Id.)

Phillips later prepared a detailed report in which he concluded that the damage to the yacht's engines was not caused by the May 2012 grounding.  (Id. at 8–9, 19–20.)  Rather, he found that the engines failed because of "service life exhaustion," relating to excessive oil usage.  (Id.; Watters Aff. Ex. A.)  He then prepared two itemized damage appraisal reports dated March 17, 2013: the first regarding the grounding damage the

Ex. F).  Because the distinction does not matter for purposes of this Order, the Court will adopt the parties' plural vernacular.

[2] While Phillips's request was vague as to whether the engines had to be removed or simply disassembled, the Hansens could not reinstall the original engines once disassembled because of a change in government regulations.  (See Warner Aff. Ex. 7 at 2–3; Watters Aff. Ex. G.)  This caused additional time and expense to be incurred by the Hansens in preparing for the inspection of the engines.

marina in Missouri repaired for $1,200.36 (Warner Aff. Ex. 8 at 1–3), and the second

concerning the grounding damage repaired by Hansen's Harbor in Minnesota for

$24,612.24 (id. at 4–14).  These reports only included expenses incurred from the

damage caused by the grounding.  (See id. Ex. 8.)  Notably, the repairs to the engines

were not included in the appraisals because, unlike the rest of the damage, Phillips

determined it was not caused by the grounding.  (Warner Aff. Ex. 7 at 8–9, 19–20.)

The damage appraisals totaled $25,812.60.  (Warner Aff. Ex. 9.)  After a $5,000

property-damage deductible was subtracted, MAIC paid $20,812.60 to the Hansens on

March 18, 2013.[3]  (Id.)  At that point, MAIC had effectively denied the Hansens claim

for the damage to the engines.  (See Matthews Dep. 142 ("I received the surveyor's

report, it had what damages were from the grounding and what were not, and I issued that

payment."), 172 ("There was no nonresolution of the claim [in 2014] from my point of

view.").)

**The Dispute**

The Hansens continued to dispute MAIC's determination that the damage to the

engines was not loss-related.  On August 12, 2013, Berke, on behalf of the Hansens,

asked MAIC to "reconsider the claim."  (Matthews Dep. 171; Watters Aff. Ex. B.)

MAIC responded it would "gladly look at" any "physical evidence" Mr. Hansen

possessed that would demonstrate why the damaged engines were covered.  (Warner Aff.

Ex. 12.)  Yet, MAIC said it remained "confident" in its position as to the denial of

payment for the damaged engines.  (Id.)  The Hansens provided information to MAIC

---

[3] The Hansens refer to this payment as a "partial payment" throughout their Memorandum.

which they believed contradicted Phillips's findings.  (See Watters Aff. Ex. A.)  But,

when he examined the additional information and talked further with Peter Hansen, his

"opinion [was] unchanged."  (Id. Ex. F.)

By April 2014, the dispute had expanded: the Hansens still disputed the denial of

payment for damage to the engines, but they also sought reimbursement for the labor

expended to get the engines ready for the second inspection.  (Id. Exs. D, F.)  On

September 19, 2014, MAIC made a settlement offer of $4,500 as to the labor charges

only, which, to this Court's knowledge, was rejected.  (Id. Ex. D.)

The Hansens then commenced this action in Goodhue County, Minnesota District

Court.  MAIC removed the action to this Court on June 26, 2015 and, with discovery

closed, now moves for summary judgment.  The Motion has been fully briefed and is ripe

for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557

U.S. 557, 586 (2009).  The moving party bears the burden of showing that the material

facts in the case are undisputed.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042

(8th Cir. 2011) (en banc); Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir.

2009).  The Court must view the evidence, and the inferences that may be reasonably

drawn from it, in the light most favorable to the nonmoving party.  Beard v. Banks, 548

U.S. 521, 529–30 (2006); Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th

Cir. 2009).  The nonmoving party may not rest on mere allegations or denials, but must

show through the presentation of admissible evidence that specific facts exist creating a

genuine issue of material fact for trial.  Fed. R. Civ. P. 56(c)(1)(A); <u>Wood v. SatCom</u>

<u>Mktg., LLC</u>, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

MAIC argues that the instant action is barred by the suit-limitations clause in the

Policy.  That clause limits the time in which the Hansens may bring an action against

MAIC to two years from the date of loss (Warner Aff. Ex. 1 at 2), and the Hansens

commenced the instant action in May 2015, three years after the grounding in May 2012

(<u>see</u> Doc. No. 1).  The Hansens respond that the clause is invalid.  (Mem. in Opp'n at 1,

6.)

### A.    Is the Policy's Suit-Limitations Clause Valid?[4]

Normally, a party has six years to bring a contract claim in Minnesota.  <u>See</u> Minn.

Stat. § 541.05, subd. 1.  But, "[p]arties may limit the time within which legal claims may

be brought provided there is no statute specifically prohibiting the use of a different

limitations period in such a case and the time fixed is not unreasonable."  <u>Peggy Rose</u>

<u>Revocable Trust v. Eppich</u>, 640 N.W.2d 601, 606 (Minn. 2002) (citing <u>Henning Nelson</u>

<u>Constr. Co. v. Fireman's Fund Am. Life Ins. Co.</u>, 383 N.W.2d 645, 650–51 (Minn.

---

[4] "State law governs the interpretation of insurance policies."  <u>Nat'l Am. Ins. Co. v. W & G, Inc.</u>, 439 F.3d 943, 945 (8th Cir. 2006); <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.</u>, 346 F.3d 1160, 1164 (8th Cir. 2003).  The parties agree that Minnesota law applies to the interpretation of the Policy.  Under Minnesota law, the interpretation of an insurance policy is a question of law for the Court.  <u>Watson v. United Servs. Auto. Ass'n</u>, 566 N.W.2d 683, 688 (Minn. 1997).  When an insurance policy's language is unambiguous, a court must interpret "that language in accordance with its plain and ordinary meaning."  <u>Ill. Farmers Ins. Co. v. Glass Serv. Co.</u>, 683 N.W.2d 792, 799 (Minn. 2004).

1986)); see also L & H Transp., Inc. v. Drew Agency, Inc., 403 N.W.2d 223, 225 (Minn. 1987).

The Hansens argue the Policy's suit-limitations clause "conflicts with a specific statute as applied to the facts of this case." (Mem. in Opp'n at 5.) They point to a provision of Minnesota's Unfair Claims Practices Act ("UCPA"), which provides:

> The following acts by an insurer . . . constitute unfair settlement practices: . . . failing to advise in writing an insured or claimant who has filed a notification of claim known to be unresolved, and who has not retained an attorney, of the expiration of a statute of limitations at least 60 days prior to that expiration.

Minn. Stat. § 72A.201, subd. 4(8). The Hansens contend that MAIC failed to advise them of or provide them with timely, written notice of the expiration of the Policy's two-year limitations period. They argue this alleged violation of the UCPA invalidates the limitations period in this case. [5]

However, by its plain and ordinary meaning, this statute does not "prohibit" or "conflict" with the suit-limitations clause. In fact, the UCPA's language states "a statute of limitations," and hence, requires notification prior to the expiration of *any* limitations period in an insurance policy, regardless of whether it is the default six-year limit or

_____

[5] While it is unclear what exactly the Hansens are arguing here, to the extent they argue the otherwise *valid* clause is *unenforceable against them*, their argument also fails. (See Mem. in Opp'n at 6.) In Redeemer Covenant Church of Brooklyn Park v. Church Mutual Insurance Company, 567 N.W.2d 71, 75–76 (Minn. Ct. App. 1997), the court held that the defendant-insurer did not waive its right to invoke a policy exclusion by its violation of a provision of the UCPA. Furthermore, the UCPA does not grant a private cause of action against an insurer. Minn. Stat. § 72A.201, subd. 1 (a violation gives rise only to "appropriate administrative remedies, including fines" to be sought and imposed by the commissioner of commerce); Elder v. Allstate Ins. Co., 341 F. Supp. 2d 1095, 1101 (D. Minn. 2004) (Kyle, J.); Morris v. Am. Family Mut. Ins. Co., 386 N.W.2d 233 (Minn. 1986). Thus, "no estoppel can be predicated on its violation." TGA Dev., Inc. v. N. Ins. Co. of NY, 62 F.3d 1089, 1091 (8th Cir. 1995).

something else entirely.  And, there is no indication that this statute was intended to prohibit shorter limitations periods in insurance contracts.  The purpose of the UCPA is to protect insureds from the insurer's deceptive practices; for instance, denying claims without identifying the policy provision upon which the denial was based, conducting no investigation of the claim, or failing to provide information regarding where an insured could take complaints.  See Minn. Stat. §§ 72A.17, 72A.201, subd. 8; Elder v. Allstate Ins. Co., 341 F. Supp. 2d 1095, 1101 (D. Minn. 2004) (Kyle, J.).  Thus, this statute does not prohibit a shorter limitations period in a private insurance contract.

The Hansens next contend that the two-year limitations period is unreasonable in length because MAIC "never advised" them of the Policy's limitations period, "never [] provided a general instruction to [them] to review the policy for their rights," and "never provided [them] a denial of the claim or told them the claim file was being closed." (Mem. in Opp'n at 8.)  Yet, these alleged failures do not bear on the reasonableness of the clause.

The Hansens' first two contentions are inconsistent with the record.  Regardless of the UCPA's notice-of-expiration requirement (on which the Hansens do not rely here), the Hansens were on notice of the two-year limitations period because the clause was expressly set out in the Policy.  See, e.g., Huseman v. Life Ins. Co. of N. Am., 402 N.W.2d 618, 620 (Minn. Ct. App. 1987); Gartner v. Eikill, 319 N.W.2d 397, 398 (Minn. 1982) ("[A] person who signs a contract may not avoid it on the ground that he did not read it."); Dunlap v. Warmack-Fitts Steel Co., 370 F.2d 876, 884 (8th Cir. 1967). Hence, their argument that they were *never* advised of it is simply incorrect.  And, in the

same vein, MAIC did provide the Hansens with an instruction to review the Policy when they first submitted their claim.  (See Warner Aff. Ex. 3 ("We recommend that you familiarize yourself with your policy.").)  Simply put, the Hansens cannot claim they were unaware of the limitations period and that this makes its length unreasonable.

Furthermore, when the Hansens received payment for the covered damage in March 2013, they still had over one-year left to file suit before the limitations period expired.  The cause of action they assert now matured on the date MAIC issued payment for all the damage, except that to the engines.  There is no evidence in the record that could have reasonably caused the Hansens to believe MAIC was going to change its decision, even with further compelling physical evidence.  Although discussions continued for a year, MAIC did not alter its decision and never said it was going to. These communications were initiated by Berke in an attempt to persuade MAIC to change its position.  See Michael Foods, Inc. v. Allianz Ins. Co., Civ. No. 02-3504, 2003 WL 1956294, at *3 (D. Minn. Apr. 21, 2003) (Rosenbaum, C.J.) (ongoing communications from insured's broker to insurer regarding coverage position did not render one-year suit limitation clause unreasonable).  In none of these communications did MAIC represent that the claim regarding the engines was still "open."  There is also no evidentiary support for the Hansens' contention that they only received "partial payment" or that they did not know their claim was denied.  The Hansens knew the claim for the damage to the engines was denied—that was why they, via Berke, continued to debate with MAIC.

Even drawing all reasonable inferences in favor of the Hansens, the Court is unpersuaded that the suit-limitations clause is unreasonable.  A court analyzes the reasonableness of a contract limitation "on a case-by-case basis, looking at the particular facts of each case," in light of several factors.  Henning Nelson Constr., 383 N.W.2d at 651.  These factors include the amount of time remaining under the clause after the insurer denies the claim, whether additional information was needed for the insured's cause of action to mature, and the sophistication of the parties.  Michael Foods, Inc., 2003 WL 1956294, at *3; L & H Transport, 403 N.W.2d at 226 n.1; Minn. Mut. Fire & Cas. Co. v. N. Lakes Constr., Inc., 400 N.W.2d 367, 370–71 (Minn. Ct. App. 1987); Gendreau v. State Farm Fire Ins. Co. of Bloomington, Ill., 288 N.W. 225, 226 (Minn. 1939).

Much like in Michael Foods, 2003 WL 1956294, at *1, the Hansens worked with a sophisticated insurance broker, Berke, who could not have reasonably thought the claim was still open.  (Watters Aff. Ex. B (Berke memorandum asking MAIC to "*reconsider* the claim") (emphasis added).)  Based in part on the sophistication of the parties and the broker, the court in Michael Foods held that there was no basis to find the one-year suit-limitations clause unreasonable and granted summary judgment.  2003 WL 1956294, at *3.  The same result is warranted here.

Finally, this is not a situation where the insurer's investigation delayed the processing of an insurance claim so as to make the time limit impractical—MAIC paid the Hansens for their covered losses within one year.  See id. at *4.  On this point, the Hansens make much ado about the settlement offer MAIC provided them in September 2014.  However, the record reveals this offer was for the labor costs incurred by the

Hansens in readying the yacht for the second inspection.  (<u>See</u> Watters Aff. Ex. D.)

These costs are unrelated to whether the damaged engines are covered.

      As such, the Court concludes that the Policy's two-year limitations clause is not

unreasonably short, and does not conflict with a specific statute.  The clause is valid and

enforceable and, because the Hansens failed to comply with the terms of it, their action is

untimely.

      **B.**      **Is MAIC Nonetheless Estopped From Enforcing the Suit-Limitations Clause?**

      The Hansens assert that MAIC is estopped by its conduct from enforcing its suit-

limitations clause.  An insurer is estopped from asserting a time limitation as a defense to

a claim when it would be "unjust, inequitable, or unconscionable" to do so.  <u>L & H

Transport</u>, 403 N.W.2d at 227.  Estoppel is ordinarily a question for the jury, but "when

only one inference can be drawn from the facts," it is a question for the court.  <u>Id.</u>  The

conduct which the Hansens argue estops MAIC from asserting the time bar is not

disputed and thus presents no genuine issue of material fact.

      To establish the defense of estoppel, the Hansens must show that MAIC made

representations that they relied on to their detriment.  <u>Avon State Bank v. Banc Insure,

Inc.</u>, Civ. No. 12-2557, 2014 WL 1048503, at *8 (D. Minn. Mar. 18, 2014) (Kyle, J.),

<u>aff'd</u>, 787 F.3d 952 (8th Cir. 2015); <u>Dakota County v. BWBR Architects</u>, 645 N.W.2d

487, 493 (Minn. Ct. App. 2002).  Yet, the Hansens point to no representations by MAIC

on which they reasonably relied, other than MAIC's response that it would "gladly look

at" any "physical evidence," but nonetheless remained "confident" in its position.  (<u>See</u>

Warner Aff. Ex. 12.)  The Hansens read this statement too liberally; in the Court's view, there is nothing in this response that could *reasonably* induce the Hansens to think their claim was still open and that further payment was forthcoming.  See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 510 (1st Cir. 1998) (insurer's only representation that it "might" later resume benefit payments could not, as a matter of law, induce *reasonable* reliance).

Instead, the Hansens point to alleged failures by MAIC to deny the claim, provide notice of the time limit, advise of closing the file, and that no further payment was coming as inducement to not bring suit.  See Pollard v. Southdale Gardens of Edina Condo Ass'n., 698 N.W.2d 449, 454 (Minn. Ct. App. 2005) (the conduct of the estopped party may consist of silence or negative omission to act when it was his duty to speak or act).  The Hansens rely upon two cases to support their argument.  In Engineering & Construction Innovations, Inc. v. Western National Mutual Insurance Co., A 12-1785, 2013 WL 2460400 (Minn. Ct. App. July 10, 2013), the insured had two insurance policies through the same insurer.  The insured only submitted a claim under one policy, which was denied; when the insured learned of the potential coverage under the other policy, the limitation period had expired.  Id. at 5.  The court found that the insurer breached its duty to inform the insured that coverage was available under the second policy and was thus estopped from asserting the time bar.  Id.  Engineering & Construction, however, is easily distinguishable from this case.  Here, there is only one policy, under which the Hansens submitted their claim and MAIC issued payment.  The Hansens were informed that MAIC was not going to cover the damaged engines one year

before the expiration, there were no other possible coverage options available, and the Hansens were compensated for most of the damage to the yacht.

The Hansens also reference Avon State Bank, 2014 WL 1048503, at *8.  There, this Court found the insurer was estopped from asserting the time limit in the policy because the insurer did not deny coverage until after the limitation period had expired and was meanwhile defending the insured in the underlying lawsuit.  Id.  The court found that it would be "not only unjust but perverse" to punish the insured in this instance.  Id.  Avon State Bank is distinguishable because MAIC did deny coverage for the damage to the engines by not issuing a payment for it and not listing it in the appraisal reports.  MAIC's conduct, therefore, did not "lull [the Hansens] into inactivity."  L & H Transport, 403 N.W.2d at 227; see also LaChapelle, 142 F.3d at 510.  Thus, MAIC is not estopped from asserting the two-year suit-limitations clause as a time bar.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that MAIC's Motion for Summary Judgment (Doc. No. 18)[6] is **GRANTED** and the Hansens' Complaint (attached to Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: May 18, 2016                              s/Richard H. Kyle
                                                 RICHARD H. KYLE
                                                 United States District Judge

---

[6] There are currently two, identical pending Motions for Summary Judgment (Doc. Nos. 16 and 18) before the Court; both are **GRANTED**.